Filed 1/20/26

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| In re BELLA L. et al., Persons Coming Under the Juvenile Court Law. | B348279 |
| | (Los Angeles County Super. Ct. No. 22CCJP02864A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SUEMI P. et al., | |
| Defendants and Appellants. | |


APPEAL from an order of the Superior Court of Los Angeles County, Nancy Ramirez, Judge. Affirmed.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant Suemi P.

John B. Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant Diego L.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

In *In re Dezi C.* (2024) 16 Cal.5th 1112, 1140-1141 (*Dezi C.*), our Supreme Court held that a juvenile court's finding that a social service agency conducted an adequate initial inquiry into whether a dependent child is an "Indian child" within the meaning of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.[1]) would be affirmed as long as that finding was supported by substantial evidence, "even if the agency did not inquire of everyone who has an interest in the child" (*Dezi C.*, at p. 1141). Is a finding that an initial inquiry was adequate supported by substantive evidence when the agency inquires of the parents and seven extended family members on the child's paternal side but fails to inquire of the paternal grandfather? We hold that it is, and affirm the order terminating the parents' parental rights.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

## FACTS AND PROCEDURAL BACKGROUND[2]

### I. The Family

Suemi P. (mother) and Diego L. (father) have two children relevant to this appeal—namely, Bella L. (born June 2018) and Emma L. (born April 2022) (collectively, "the children").[3]

### II. Section 300 Petition and Initial ICWA Inquiry

On July 25, 2022, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over the children under section 300, subdivision (b)(1) due to father's domestic violence against mother and mother's failure to protect the children from that violence.[4]

The day after the petition was filed, mother and father each filed ICWA-020 forms in which they denied knowledge of any Native American heritage, and the juvenile court held an initial hearing on the petition and removed the children from the parents' custody. At that hearing, the court acknowledged the parents' responses on their ICWA-020 forms; informed the parents "to notify their attorney, the social worker, and the court"

---

[2] Because the only challenge on appeal is to the sufficiency of the ICWA inquiry, we limit our discussion to the facts relevant to that issue.

[3] The parents also have a third child together, Diego L., Jr. (born May 2023), who was born during the pendency of these proceedings and is not a subject of this appeal.

[4] The petition also included an allegation of domestic violence under section 300, subdivision (a) and allegations of medical neglect under section 300, subdivisions (b)(1) and (j), but the Department dismissed those allegations pursuant to a settlement.

if they were to discover any Native American heritage; reminded the Department of its "ongoing duty to inquire of all relatives and case participants about possible Native American heritage throughout the life of this case"; and found there was "no reason to know" that ICWA applied.

The Department interviewed mother on August 24, 2022 and father on August 26, 2022; each disaffirmed any knowledge of Native American heritage.

### III. Jurisdiction and Disposition of Section 300 Petition

The juvenile court held a jurisdiction and dispositional hearing on October 4, 2022. The court sustained the petition and ordered reunification services for mother and father. The children were placed with their paternal great aunt and paternal great uncle.

### IV. Status Review Hearings

At the six-month section 366.21 review hearing, held on April 14, 2023, the juvenile court extended reunification services.

At the twelve-month section 366.21 review hearing, held on September 7, 2023, the juvenile court found the parents to be in substantial compliance with their case plans and ordered the children returned to the parents' custody with family maintenance services.

Around this time, the Department asked mother about Native American heritage two more times, on August 11, 2023 and on April 16, 2024; she continued to deny knowledge of any such heritage.

### V. Sections 342 and 387 Petitions and Additional ICWA Inquiry

On June 6, 2024, the Department filed a subsequent petition pursuant to section 342, asking the court to assert

jurisdiction pursuant to section 300, subdivision (b)(1),[5] and a supplemental petition pursuant to section 387, both of which were based on a further incident of domestic violence between the parents.[6]  The children were removed from the parents' custody and again placed with paternal great aunt and paternal great uncle.

The Department then conducted a further ICWA inquiry, asking the following family members between June 18, 2024 and July 3, 2024 about possible Native American heritage—namely, paternal great aunt, mother, father, paternal great grandmother, and maternal grandmother.  Each family member denied any knowledge of any Native American heritage.

## VI.    Jurisdiction and Disposition of Sections 342 and 387 Petitions

At the July 29, 2024 jurisdiction hearing on the sections 342 and 387 petitions, the juvenile court "reiterat[ed] its prior findings" that ICWA did not apply, and sustained the petitions.

At the disposition hearing on the sections 342 and 387 petitions, held on January 3, 2025, the juvenile court terminated reunification services and set a section 366.26 permanency planning hearing.  The juvenile court continued to find that ICWA did not apply.

---

[5]     The Department also sought to assert jurisdiction under section 300, subdivision (a) based on the parents' domestic violence, but the court dismissed that count.

[6]     The section 387 petition was also based on the parents' failure to comply with a court order for conjoint counseling, but the juvenile court amended the petition to conform to proof and struck that allegation.

5

## VII. Continuances to Conduct Further ICWA Inquiry

At the next hearing, on May 5, 2025, the Department requested a continuance so that it could conduct "a thorough ICWA inquiry." The juvenile court granted the continuance and ordered the Department to provide an update on its efforts prior to the permanency planning hearing.

The Department asked (or re-asked) the following family members about Native American heritage on June 12, 2025—namely, paternal great aunt, paternal great uncle, paternal great aunt and uncle's son, paternal great aunt's sister, and paternal great aunt's mother. They all denied any Native American heritage and indicated they were not aware of any other family members who might have any knowledge.

At the next hearing, held on June 16, 2025, the Department indicated that it had "failed to conduct its full ICWA inquiry" and requested a further continuance, which the court granted while again ordering the Department to prepare a report updating the court on its efforts.

Then, on July 15, 2025, the Department re-asked maternal grandmother, who indicated Mayan heritage but no Native American heritage, and asked paternal grandmother, who also denied any Native American heritage.

## VIII. Termination of Parental Rights

On July 16, 2025, the juvenile court found that ICWA did not apply and continued the permanency planning hearing to allow father—who had been arrested for felony domestic violence against mother on July 15, 2025—to be present.

On August 13, 2025, after finding there was "no reason to know this is a case covered by" ICWA, the juvenile court found

the children adoptable by clear and convincing evidence and terminated parental rights.

IX. **Appeal**

Mother and father both filed timely notices of appeal.

**DISCUSSION**

Mother and father[7] argue that we must conditionally reverse the order terminating parental rights because the Department failed to comply with ICWA by failing to ask paternal grandfather if he had reason to believe the children might have Native American heritage.

ICWA was enacted "out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies,'" and "aims to keep Indian children connected to Indian families." (*Haaland v. Brackeen* (2023) 599 U.S. 255, 265.) To that end, under ICWA and the corresponding statutes the California Legislature enacted to implement it (§§ 224-224.7), a juvenile court and the Department have duties aimed at assessing whether a child in a dependency action is an "Indian child"—that is, a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); §§ 224.1, subd. (a) [adopting federal law definition], 224.2, 224.3.) As relevant here, the Department has an ongoing and affirmative duty "to inquire whether [a] child is an Indian child," which includes the duty to ask "extended family members" "whether th[e] child is or may be an Indian child." (§ 224.2,

---

[7] Father joins in the arguments mother makes in her opening brief and reply brief pursuant to California Rules of Court, rule 8.200(a)(5).

7

subds. (a) & (b).)  Our Supreme Court has acknowledged that this duty of initial inquiry does not require interviewing "every" extended family member; rather, where the juvenile court's finding that the Department conducted an adequate inquiry and that ICWA does not apply is "supported by sufficient evidence," conditional reversal is not required "even if the agency did not inquire of everyone who has an interest in the child." (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1140-1141.)  The juvenile court's finding that an ICWA inquiry is adequate is "'a quintessentially discretionary function'" that is "subject to a deferential standard of review." (*Id.* at p. 1141.)

The record contains sufficient evidence from which the juvenile court could conclude that the Department complied with its initial duty of inquiry and that ICWA was inapplicable. Throughout the course of the proceedings, the Department inquired about the children's potential Native American heritage from the following family members:  mother, father, maternal grandmother, paternal grandmother, paternal great grandmother, paternal great aunt, paternal great uncle, paternal great aunt and uncle's son, paternal great aunt's mother, and paternal great aunt's sister—all of whom expressed no reason to believe the children might have Native American ancestry. Although the Department did not inquire of paternal grandfather, despite interviewing him on other topics during these proceedings, this failure does not render the Department's otherwise diligent and well-documented efforts unreliable or the juvenile court's finding that ICWA did not apply unworthy of our deference.  (See *Dezi C.*, *supra*, 16 Cal.5th at p. 1141 ["On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate,

8

and duly diligent on the specific facts of the case"]; *In re E.W.* (2023) 91 Cal.App.5th 314, 323 [affirming ICWA finding where failure to interview additional relatives did not "cast[] any doubt on the reliability of the answers already obtained from the parents and relatives"].)  On this record, we conclude that conditional reversal for further ICWA inquiry is neither required nor warranted.

## DISPOSITION

The juvenile court's order terminating mother and father's parental rights is affirmed.

## CERTIFIED FOR PUBLICATION.


_____, P. J.
                    HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
KIM (D.)